# UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| CARRIE HOLLISTER, | Case No.: 2:10-cv-00129 REB |
| Petitioner, | **MEMORANDUM DECISION AND ORDER** |
| vs. | |
| MICHAEL ASTRUE, Commissioner, Social Security Administration, | |
| Respondent. | |

Now pending before the Court is Carrier Hollister's Petition for Review (Docket No. 1), seeking review of the Social Security Administration's decision to deny her claim for Title II disability benefits. The action is brought pursuant to 42 U.S.C. § 405(g). Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. ADMINISTRATIVE PROCEEDINGS

Carrier Hollister ("Petitioner") applied for disability insurance benefits on February 27, 2007, alleging disability beginning April 1, 2006. (AR 87-89). Petitioner's claim was initially denied on May 10, 2007 (AR 54, 56-57) and, again, on reconsideration on September 12, 2007 (AR 55, 59-62). On November 19, 2007, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ"). (AR 65). On February 18, 2009, ALJ R.S. Chester held a hearing in Spokane, Washington, at which time Petitioner, represented by attorney Louis Garbrecht, appeared and testified. (AR 19-49). An impartial medical expert, David Rullman,

**MEMORANDUM DECISION AND ORDER - 1**

M.D., and an impartial vocational expert, K. Diane Kramer, also appeared and testified during the same February 18, 2009 hearing.

On March 11, 2009, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act, based on her ability to perform past relevant work as a job coach/teacher, medical transcriber, and executive secretary. (AR 8-18). Petitioner timely requested review from the Appeals Counsel on April 13, 2009. (AR 6-7 & 157-164). On January 15, 2010, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security. (AR 1-5).

Having exhausted her administrative remedies, Petitioner timely files the instant action, arguing the ALJ erred by (1) not finding depression and chronic fatigue syndrome ("CFS") as severe impairments, (2) failing to make a specific finding as to the severity of her headaches, vertigo, neuropathy, and irritable bowel syndrome ("IBS"), (3) improperly relying upon the testimony of a non-examining medical advisor, and (4) failing to set forth adequate reasons for discrediting Petitioner's testimony. *See* Pet. for Review, pp. 2-3 (Docket No. 1); *see also infra* at p. 7, n.1. Petitioner therefore requests that the Court reverse the ALJ's decision and order the payment of benefits. *See* Pet.'s Brief, p. 14 (Docket No. 15).

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards. 42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990). Findings as to any question of fact, if supported by substantial evidence, are conclusive. 42

**MEMORANDUM DECISION AND ORDER - 2**

U.S.C. § 405(g). In other words, if there is substantial evidence to support the ALJ's factual

decisions, they must be upheld, even when there is conflicting evidence. *Hall v. Sec'y of Health,*

*Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might

accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human*

*Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less

than a preponderance, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975);

*Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989), and "does not mean a large or

considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole

to determine whether it contains evidence that would allow a reasonable mind to accept the

conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony,

*Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984), resolving ambiguities, *see Vincent ex. rel.*

*Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984), and drawing inferences logically

flowing from the evidence, *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). Where the

evidence is susceptible to more than one rational interpretation in a disability proceeding, the

reviewing court may not substitute its judgment or interpretation of the record for that of the

ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal

standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's

**MEMORANDUM DECISION AND ORDER - 3**

construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

## III.  DISCUSSION

### A.    Sequential Processes

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe her physical/mental impairments are and regardless of her age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner did not engage in substantial gainful activity since April 1, 2006.  (AR 13).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration

**MEMORANDUM DECISION AND ORDER - 4**

requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination

of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the

ALJ found that Petitioner had the following severe impairments: fibromyalgia and/or

osteoarthritis.  (AR 13-14).

      The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed

impairments, while severe, do not meet or medically equal, either singly or in combination, the

criteria established for any of the qualifying impairments.  (AR 14).

      The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity is sufficient for the claimant to perform past relevant

work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional

**MEMORANDUM DECISION AND ORDER - 5**

capacity is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. 20 C.F.R. §§ 404.1545, 416.945. Likewise, an individual's past relevant work is work performed within the last 15 years or 15 years prior to the date that disability must be established; also, the work must have lasted long enough for the claimant to learn to do the job and be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1560(b), 404.1565, 416.960(b), 416.965. Here, the ALJ determined that Petitioner has the residual functional capacity to perform light work, with (1) only postural limitations for occasional stopping, kneeling, crawling, and balancing; (2) no climbing or unprotected heights such as ladders, ropes, and scaffolding; and (3) only occasional overhead reaching and moderate exposure to moving/vibrating machinery. (AR 14-16). As a result, the ALJ determined that Petitioner maintained the capacity to return to her past work as a job coach/teacher, medical transcriber, and executive secretary, as such work "did not require the performance of work-related activities precluded by [Petitioner's] residual functional capacity. (AR 16-17).

In the fifth and final step, if it has been established that a claimant can no longer perform past relevant work because of her impairments, the burden shifts to the Commissioner to show that the claimant retains the ability to do alternate work and to demonstrate that such alternate work exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993). If the claimant is able to do other work, she is not disabled; if the claimant is not able to do other work and meets the duration requirement, she is disabled. Here, the ALJ found that Petitioner is capable of performing her past relevant work and, thus, did not address whether Petitioner is able to do other work. (AR 16-17).

**MEMORANDUM DECISION AND ORDER - 6**

**B.      Analysis**

Petitioner *appears* to challenge the ALJ's denial of disability benefits in four ways: (1) the ALJ erred in not finding Petitioner's alleged depression and CFS to be severe impairments; (2) the ALJ failed to make specific findings as to the severity of Petitioner's headaches, vertigo, neuropathy, and IBS; (3) the ALJ impermissibly relied upon the testimony of Dr. Rullman, a non-examining medical advisor; and (4) the ALJ did not provide clear and convincing evidence for rejecting her own testimony.[1]  *See* Pet. for Review, pp. 2-3 (Docket No. 1)

      1.      Petitioner's Alleged Depression and CFS

          a.      *Depression*

Although attempting to recount her entire history of depression from 1999-2008, Petitioner argues only that her "mental impairment demonstrates a more than 10-year history of treatment for depression and anxiety" and that she "would isolate for days and had a poor memory."  *See* Pet.'s Brief, pp. 6-7, 10-11 (Docket No. 15).  Through such an argument, Petitioner presumably intends to argue that the ALJ's characterization of her mental condition –

---

[1]  Petitioner's supporting paperwork is not entirely consistent.  For example, within her Petition for Review, Petitioner claims that the ALJ erred "in not finding depression and Chronic Fatigue Syndrome (CFS) as severe impairments" and "by failing to make a specific finding as to the severity of the Petitioner's headaches, vertigo, neuropathy, and irritable bowel syndrome (IBS)."  *See* Pet. for Review, p. 2 (Docket No. 1).  However, within the "Introduction" section of Petitioner's Brief, Petitioner claims that the ALJ "failed to include her depression, neuropathy, and irritable bowel syndrome as severe impairments."  *See* Pet.'s Brief, p. 1 (Docket No. 15).  Then, after devoting over seven pages to what appears to be only a rambling regurgitation of the medical record, under the "Legal Argument" section of Petitioner's Brief (comprised only of three paragraphs and four sentences), Petitioner references her alleged depression, anxiety, neuropathy, and IBS as severe impairments.  *See id*. at pp. 10-11.  For clarity's sake and logical reasons, the undersigned will consider Petitioner's Petition for Review as identifying those issues now before this Court.

**MEMORANDUM DECISION AND ORDER - 7**

that is, that Petitioner's "indications of depression" are not severe (AR 16) – is not supported by substantial evidence in the record.  If that is indeed the case, the undersigned disagrees.

First, as Respondent points out, Petitioner alleged "moderate depression" when she filed her initial claim.  *See* Resp.'s Brief, p. 6 (Docket No. 20) (citing (AR 111)).  Consistent with this preliminary description of the extent of her depressive condition, Petitioner repeatedly portrayed her depression as only "moderate" throughout 2007.  (AR 115, 125, 143, 152).  To claim something different now, in hindsight, is unconvincing.  The record unquestionably reveals that Petitioner suffered from depression to *some* extent; however, it does not support a finding that Petitioner's depression significantly limited her ability to perform basic work activities as is required under the Social Security Act.  *See supra* at p. 5.

Second, within a May 10, 2007 Psychiatric Review Technique, Maximo J. Callao, Ph.D., determined Petitioner's depression to be "not severe."  (AR 171-174).  Further, Dr. Callao found (1) no episodes of decompensation (i.e., functional deterioration) and (2) only mild degrees of limitation as to daily living activities, maintaining social functioning, and maintaining concentration, persistence, or pace.  (AR 181).  Although acknowledging that Petitioner "is being treated with medication for depression by her regular treating physician," Dr. Callao noted that "[t]here is NO evidence of treatment by a mental health professional."  (AR 183) (capitalization in original).  Ultimately, Dr. Callao concluded:

> • She is able to perform routine daily light activities.  Activities are limited due to fibromyalgia pain.  She is able to drive, perform personal care and light chores.  She is able to prepare simple light meals.  She exercises regularly and goes to PT.  She does dishes, laundry, dusting, and vacuuming.  She cares for her pets.

**MEMORANDUM DECISION AND ORDER - 8**

- She works with animal rescue and does pit bull education and places animals in homes. She is able to pay bills and manage a checking account.

- The evidence does not demonstrate a severely limiting mental condition.

*See id.* On September 11, 2007, Dave Sanford, Ph.D., reviewed all the evidence in the file and affirmed Dr. Callao's May 10, 2007 assessment. (AR 204).

Third, the record reflects that, when Petitioner actually discusses her mental condition with her medical providers, it is in a situational context and not a function of any underlying, chronic illness. (AR 255) ("Over the last two months, she has been very depressed. She has good days and bad days. She cries easily. She feels it is mostly situational. She is having relationship problems. She has not done any counseling."); *see also Tindell v. Barnhart*, 444 F.3d 1002, 1007 (8th Cir. 2006) (upholding ALJ's decision that appellant is not disabled under Social Security Act due, in part, to appellant's apparent situational depression). Moreover, in this respect, the record does not reflect Petitioner's participation in any significant mental health treatment, despite being advised by her medical providers at Post Falls Family Medicine that "[s]he needs to start seeing a counselor on a regular basis." (AR 255).

Tasked with resolving the ambiguities and contradictions in the record, the ALJ found that Petitioner's depression was situational and non-severe. (AR 16). This conclusion, coupled with its application to Petitioner's residual functional capacity analysis, while potentially at odds with another's interpretation of the same record, is nonetheless supported by specific and legitimate reasons consistent with substantial evidence in the record. As a result, the ALJ's decision on this question will not be disturbed here.

**MEMORANDUM DECISION AND ORDER - 9**

b.      *CFS*

Social Security Ruling 99-2p ("SSR 99-2p")[2] confirms that a disability claim involving

CFS is evaluated "using the sequential evaluation process, just as for any other impairment."

SSR 99-2p at 4.  According to SSR 99-2p, CFS is

> a systemic disorder consisting of a complex of symptoms that may
> vary in incidence, duration, and severity . . . characterized in part by
> prolonged fatigue that lasts 6 months or more and that results in
> substantial reduction in previous levels of occupational, educational,
> social, or personal activities.

*Id*. at 1.  Symptoms of CFS include impairment in short-term memory or concentration severe

enough to cause substantial reduction in previous levels of occupational, educational, social, or

personal activities; sore throat; tender cervical or axillary lymph nodes; muscle pain; multi-joint

pain without joint swelling or redness; headaches of a new type, pattern, or severity;

unrefreshing sleep; and postexertional malaise lasting more than 24 hours.  *Id*. at 2.  Within these

parameters, a person with CFS might also exhibit:

> muscle weakness, swollen underarm (axillary) glands, sleep
> disturbances, visual difficulties (trouble focusing or severe
> photosensitivity), orthostatic intolerance (e.g., light-headedness or
> increased fatigue with prolonged standing), other neurocognitive
> problems (e.g., difficulty comprehending and processing
> information), fainting, dizziness, and mental problems (e.g.,
> depression, irritability, anxiety).

*Id*.

When accompanied by appropriate medical signs or laboratory findings, CFS can be a

medically determinable impairment.  *Id*.  There must be:

---

[2]  "SSRs do not have the force of law" but "represent the Commissioner's interpretation
of the agency's regulations."  *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001).

**MEMORANDUM DECISION AND ORDER - 10**

> an impairment result[ing] from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. The Act and regulations further require that an impairment be established by medical evidence that consists of signs, symptoms, and laboratory findings, and not only by an individual's statement of symptoms.

*Id.*

Recognized medical signs of a medically determinable impairment for individuals with CFS may include: palpably swollen or tender lymph nodes on physical examination; nonexudative pharyngitis; persistent, reproducible muscle tenderness on repeated examinations, including the presence of positive tender points; or any other medical signs that are consistent with medically accepted clinical practice and are consistent with the other evidence in the record. *Id.* at 3.

Laboratory findings that likewise establish the existence of a medically determinable impairment for individuals with CFS include: an elevated antibody titer to Epstein-Barr virus (EBV) capsid antigen equal to or great than 1:5120, or early antigen equal to or greater than 1:640; an abnormal magnetic resonance imaging (MRI) brain scan; neurally meditated hypotension as shown by tilt table testing or another clinically accepted form of testing; or any other laboratory findings that are consistent with medically accepted clinical practice and are consistent with the other evidence in the case record (e.g., an abnormal exercise stress test or abnormal sleep studies, appropriately evaluated and consistent with the other evidence in the case record). *Id.*

Mental health or neurological findings that also establish the existence of a medically determinable impairment for individuals with CFS include: problems with short-term memory, information processing, visual-spatial difficulties, comprehension, concentration, speech, word-

**MEMORANDUM DECISION AND ORDER - 11**

finding, calculation, and other symptoms suggesting neurocognitive impairment; anxiety; or depression. *Id*. at 3-4.

References to Petitioner's ongoing "fatigue" repeatedly dot the medical record (*see, e.g.*, (AR 194, 196, 197, 230)); even so, the absence of a formal CFS diagnosis from a medical provider would seem to undercut any assertion of error due to the ALJ not specifically addressing the severity of Petitioner's alleged CFS as opposed to, say, her fibromyalgia.[3] However, the ALJ did *not* specifically assess those medical findings and lab reports that arguably establish Petitioner's CFS pursuant to SSR 99-2p. For example, Petitioner tested positive for the Epstein-Barr virus (AR 198-199)[4] and her doctors noted instances of muscle pain/tenderness, anxiety, depression, and an inability to focus (*see, e.g.*, (AR 150, 168, 193-94, 196-97, 202, 206-08, 215-18, 220-21, 224, 229, 245)) – all of which are listed in SSR 99-2p as signs or findings that establish CFS. *See supra* at p. 11. Instead, to discount Petitioner's alleged CFS, the ALJ relied exclusively upon Dr. Rullman's testimony at the February 18, 2009 hearing, stating within a single paragraph of his opinion:

> The claimant's representative asserted that Social Security Ruling 99-
> 2p covered/governed and denoted disability for a positive Epstein

---

[3] SSR 99-2p acknowledges and addresses the potential overlap in symptoms between CFS and fibromyalgia. SSR 99-2p at 4 ("[S]everal other disorders (including, but not limited to, [fibromyalgia] . . . ) may share characteristics similar to those of CFS. When there is evidence of the potential presence of another disorder that may adequately explain the individual's symptoms, it may be necessary to pursue additional medical or other development.").

[4] The extent of Petitioner's Epstein-Barr virus diagnosis is unclear to the Court. That is, cross-referenced against the standards identified in SSR 99-2p – values of 1:5120 and 1:640 – (*see supra* at p. 11), it appears that Petitioner's corresponding test results reflected a value of "3.69." (AR 199). Adding to the confusion is Petitioner's counsel's reference to "369" at the February 18, 2009 hearing. (AR 30). In other words, it is apparent that Petitioner has/had the Epstein-Barr virus; its extent/severity is not as easily understood, based upon the existing record.

**MEMORANDUM DECISION AND ORDER - 12**

> Barr reading/chronic fatigue syndrome symptomatology.  However,
> Dr. Rullman specifically indicated that 85% of the healthy population
> test positive for the Epstein Barr virus, and that this was no longer
> used as supporting or substantiating evidence.  He also testified that
> it was fairly common to have achy muscles and joints with/when
> fatigued.

(AR 16).  This is not enough.  Not only does the ALJ's reliance upon Dr. Rullman's testimony

not take into account the numerical threshold-component needed to correlate the Epstein Barr

virus to CFS – "equal to or greater than 1:5120, or . . . 1:640" (*see supra* at p. 11) – (as opposed

to, simply, the mere *existence* of the Epstein Barr virus), it completely disregards the application,

import, and instruction found in SSR 99-2p.[5]  Simply put, more is needed.

It is not this Court's function to resolve definitively this issue; rather, it reviews the basis

of the ALJ's decision.  While it is possible that Petitioner does not have CFS, it cannot be said

that the ALJ actually *evaluated* the record as to this issue or, even if he did, what that evaluation

entailed.  To wit, this Court is unable to deduce the actual basis for the ALJ's determination in

this respect and, therefore, must remand the action to allow the ALJ the opportunity not only to

consider the evidence supporting his findings at this stage of the analysis, but also to incorporate

properly his evaluation of that evidence in any subsequent decision.

2.    Petitioner's Alleged Headaches, Vertigo, Neuropathy, and IBS

In finding only that Petitioner's fibromyalgia and osteoarthritis constitute severe

impairments under the Act, the ALJ necessarily determined that Petitioner's other alleged

---

[5]  As to SSR 99-2p, Dr. Rullman summarily dismisses its application here, testifying in
no uncertain terms during the February 18, 2009 hearing:

> Outdated information and that, if you're quoting the wording [within
> SSR 99-2p] that [Epstein-Barr virus] supports the diagnosis or makes
> a diagnosis, no medical group or authority holds to that.

(AR 30).

**MEMORANDUM DECISION AND ORDER - 13**

conditions – headaches, vertigo, neuropathy, and IBS – did not rise to the level of severe,

medically determinable impairments; Petitioner presumably takes issue with this latter

determination.

In Social Security Ruling 96-4p ("SSR 99-4p"), the Social Security Administration

explained what is needed to show a medically determinable impairment:

> An "impairment" must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Although the regulations provide that the existence of a medically determinable physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, the regulations further provide that under no circumstances may the existence of an impairment be established on the basis of symptoms alone. Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings.
>
> No symptom or combination of symptoms by itself can constitute a medically determinable impairment. In claims in which there are no medical signs or laboratory findings to substantiate the existence of a medically determinable physical or mental impairment, the individual must be found not disabled at step 2 of the sequential evaluation process . . . .

SSR 99-4p at 1-2 (footnote omitted).[6]  Therefore, Petitioner can only establish an impairment if

the record includes signs – the results of "medically acceptable clinical diagnostic techniques"

(*see supra* at p. 14 n.5) – as well as symptoms. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005

---

[6] SSR 99-4p distinguishes "symptoms" from "signs," noting that "symptoms . . . are an individual's own perception or description of the impact of his or her physical or mental impairment(s) . . . .  However, when any of these manifestations is an anatomical, physiological, or psychological abnormality that can be shown by medically acceptable clinical diagnostic techniques, it represents a medical 'sign' rather than a 'symptom.'" SSR 99-4p at 1 n.2.

**MEMORANDUM DECISION AND ORDER - 14**

(9th Cir. 2005).  With these standards in mind, Petitioner cannot establish that her headaches, vertigo, neuropathy, and/or IBS amount to medically determinable impairments (severe or otherwise).

Citing to medical records from 1999-2007, Petitioner argues that her headaches represent an impairment that the ALJ overlooked.  *See* Pet.'s Brief, pp. 7-8.  This Court disagrees.  First, the majority of these records pre-date Petitioner's April 1, 2006 onset date.  *See Lockwood v. Comm'r Social Sec. Admin.*, 397 Fed. Appx. 288, 290 (9th Cir. 2010) ("Dr. Kaur-Jayaram's opinion that Lockwood suffered from incapacitating back pain and should be given time off and part-time work until her condition was 'sorted out' was not probative because it pre-dated Lockwood's alleged disability onset date by more than eighteen months and pre-dated a successful back surgery.").  Second, the records contain no reference to results from "medically acceptable clinical diagnostic techniques" that would support a finding of impairment.  *See Ukolov*, 420 F.3d at 1005 (citing SSR 99-4p at 1 n.2).  Instead, it is Petitioner's subjective complaints of headaches that dominate the records she cites in support of her condition.  *See* Pet.'s Brief, p. 8 (Docket No. 15).  These records, standing alone, do not and cannot establish a finding of a medically determinable impairment under the Act.[7]

As to Petitioner's alleged vertigo, she cites only to a September 24, 2001 medical record citing "[b]enign positional vertigo."  *See id*. at p. 7 (citing (AR 208)).  But for this isolated instance – taking place more than five years before her onset date – Petitioner offers no other

---

[7]  Significantly, after applying for disability benefits, on March 9, 2007, Petitioner did not list her headaches as a condition that limits her ability to work.  (AR 111).

MEMORANDUM DECISION AND ORDER - 15

evidence to support any argument that her alleged vertigo constituted a medically determinable impairment under the Act.[8]

Similarly, Petitioner's references to her alleged neuropathy in the record largely represent oblique and, again, subjective and dated situational instances of dizzy spells, unaccompanied by a formal diagnosis.  *See id.* at p. 8.  It is true that, on July 23, 2008, Linda M. Sakai, M.D., of the Coeur d'Alene Arthritis Clinic noted that Petitioner "does have an underlying peripheral neuropathy affecting the hands and feet."  (AR 245).  However, as Respondent points out, this "impression" depicts only Dr. Sakai's subjective opinion, not a diagnosis, particularly when considering Dr. Sakai's immediately subsequent notation that "[t]his may be what is causing her pain and poor balance" and, later, that "[s]he probably needs a referral back to neurology for the neuropathy and balance problems."  (AR 245-46).  An August 12, 2008 "progress record" makes no mention of any neuropathy; indeed, there appears to be no subsequent mention of the condition (and Petitioner offers none) or Petitioner's pursuit of any additional examination or treatment.  *See, e.g.*, *Bowswer v. Comm'r of Social Sec.*, 121 Fed. Appx. 231, *4 (9th Cir. 2005) (upholding ALJ's determination that claimant's alleged depression did not constitute medically determinable impairment due, in part, to claimant's failure to seek treatment).  Therefore, Petitioner's alleged neuropathy does not rise to the level of a medically determinable impairment under the Act.[9]

Finally, Petitioner argues that her "irritable bowel syndrome requires ready access to a restroom and numerous restroom breaks."  *See* Pet.'s Brief, p. 11 (Docket No. 15).  Even if true,

---

[8]  Significantly, after applying for disability benefits, on March 9, 2007, Petitioner did not list her vertigo as a condition that limits her ability to work.  (AR 111).

[9]  Significantly, after applying for disability benefits, on March 9, 2007, Petitioner did not list her neuropathy as a condition that limits her ability to work.  (AR 111).

**MEMORANDUM DECISION AND ORDER - 16**

the medical records reflect only periodic, treatable bouts with IBS, with no indication

whatsoever that her work was adversely affected as a result.  For example, although assessed

with IBS less than three months after her April 1, 2006 onset date (AR 196), Petitioner made no

mention of her IBS to her medical provider during her July 25, 2006 visit (AR 195), stating on

January 10, 2007 that "[h]er irritable bowel has been fine" (AR 194).[10]  Petitioner's IBS had

been under control until June 2007 (AR 136 & 141); by October 11, 2007, however, Petitioner

did not discuss any IBS condition (AR 230).[11]  Nearly two months later, Petitioner again offers

no IBS-related problems (AR 229).[12]  On February 1, 2008, Petitioner complained of increasing

IBS symptoms (AR 253), but subsequent treatment notes on November 7, 2008 make no mention

of her IBS (AR 255).[13]  The point here is not to dismiss Petitioner's IBS complaints outright, but

rather to highlight the fact that, since March 24, 2006 (AR 196), (1) Petitioner complained of her

IBS a limited number of times; (2) only subjective perceptions of Petitioner's IBS problems exist

in the record, (3) Petitioner's IBS appeared to respond well to medication, and (4) there is no

indication that Petitioner's ability to work was adversely affected by her managed IBS

symptoms.  Accordingly (like her alleged headaches, vertigo, and neuropathy), the record

---

[10]  The January 10, 2007 treatment note identifies Petitioner's history as including depression, migraines, Epstein-Barr, fatigue, hypertension, and fibromyalgia.  (AR 194).  There is no reference to IBS in Petitioner's history at this time.

[11]  The October 11, 2007 treatment note identifies Petitioner's history as including fibromyalgia, hypertension, anxiety, and depression.  (AR 230).  There is no reference to IBS in Petitioner's history at this time.

[12]  The December 4, 2007 treatment note identifies Petitioner's history as including fibromyalgia, hypertension, depression, and anxiety.  (AR 229).  There is no reference to IBS in Petitioner's history at this time.

[13]  The November 7, 2008 treatment note identifies Petitioner's history as including fibromyalgia, hypertension, depression, anxiety, and GERD."  (AR 255).  There is no reference to IBS in Petitioner's history at this time.

**MEMORANDUM DECISION AND ORDER - 17**

supports a conclusion that Petitioner's IBS is not a medically determinable impairment under the Act.

Because substantial evidence in the record exists to support the ALJ's conclusion that Petitioner's alleged headaches, vertigo, neuropathy, and IBS do not rise to the level of medically determinable impairment (severe or nonsevere) at step two of the sequential analysis, the action will not be remanded in these respects.[14]

### 3. Dr. Rullman's Credibility

As with other evidence in the record, Petitioner literally re-states Dr. Rullman's testimony at the February 18, 2009 hearing (*see* Pet.'s Brief, pp. 3-5 (Docket No. 15)), then concludes matter-of-factly that "[t]he testimony of Dr. Ru[llman] is not credible, and cannot support the ALJ's decision" (*see id* at p. 14).[15]  Later in her reply briefing, Petitioner attempts to

---

[14]  Within her argument relating to the ALJ's challenge to Petitioner's credibility, Petitioner briefly argues that "[T]he ALJ did not consider the Claimant's combination of symptoms" under Social Security Ruling 96-8p ("SSR 96-8p").  *See* Pet.'s Brief, p. 13 (Docket No. 15) (citing *Carmickle v. Comm'r, Social Sec. Admin.*, 533 F.3d 1155 (9th Cir. 2008)).  Even though Respondent does not address this point in its briefing, this Court cannot agree with Petitioner.  First, the ALJ *did* speak to Petitioner's severe impairments (fibromyalgia and osteoarthritis) when addressing Petitioner's residual functional capacity (AR 14-16).  Second, Petitioner's alleged headaches, vertigo, neuropathy, and IBS are not medically determinable impairments (*see supra* at pp. 13-18).  *See* SSR 96-8p at 2 ("The Act requires that an individual's inability to work must result from the individual's physical or mental impairment(s).  Therefore, in assessing RFC, the adjudicator must consider only limitations and restrictions attributable to medically determinable impairments.").  Having said this, upon remand as to the issue of Petitioner's CFS (*see supra* at pp. 10-13), the ALJ's RFC analysis may require a corresponding re-examination – the action is therefore remanded further to this potential extent.

[15]  It is interesting to note that, on the one hand, Petitioner claims that Dr. Rullman lacks credibility (*see* Pet.'s Brief, p. 14 (Docket No. 15)); however, on the other hand, she cites favorably those instances where Dr. Rullman's testimony aligns with her position.  *See, e.g.*, *id.* at pp. 3, 5 ("The medical advisor at the hearing, David Ru[llman], M.D., testified that the Petitioner met the criteria set forth in SSR 99-2p for a diagnosis of chronic fatigue syndrome . . . .  Dr. Ru[llman] did testify that the petitioner has an underlying medical condition that could produce the Petitioner's symptoms.").

**MEMORANDUM DECISION AND ORDER - 18**

further articulate her position relative to Dr. Rullman, stating that "Dr. Ru[llman] confirmed findings of Chronic Fatigue Syndrome (CFS), as required by Social Security Ruling 99-2p, but then testified that the Ruling was not medically accepted" and that "[d]isregard of a Social Security Ruling by a Social Security medical advisor is a further reason to discount Dr. Ru[llman's] opinion." *See* Pet.'s Reply Brief, pp. 1-2 (Docket No. 21). Thus, it seems that, in questioning Dr. Rullman's "credibility," Petitioner is, in fact, disputing the ALJ's findings (buttressed by Dr. Rullman's testimony) as to Petitioner's alleged CFS. On this issue, the undersigned has already determined that the matter should be remanded "to allow the ALJ the opportunity not only to consider the evidence supporting his findings at this stage of the analysis, but also to incorporate properly his evaluation of that evidence in any subsequent decision." *See supra* at pp. 10-13.

    4.   <u>Petitioner's Credibility</u>

Petitioner finally takes issue with the ALJ's conclusion that Petitioner's testimony concerning the intensity, persistence, and limiting effects of her symptoms is not credible. *See* Pet.'s Brief, pp. 11-14 (Docket No. 15). As the trier-of-fact, the ALJ is in the best position to make credibility determinations and, for this reason, his determinations are entitled to great weight. *Anderson v. Sullivan*, 914 F.2d 1121, 1124 (9th Cir. 1990). In evaluating a claimant's credibility, the ALJ may consider that claimant's reputation, inconsistencies either in testimony or between testimony and conduct, daily activities, past work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the alleged symptoms. *Light v. Social Sec. Admin.*, 119 F.3d 789, 791 (9th Cir. 1997). In short, "[c]redibility decisions are the province of the ALJ." *Fair v. Bowen*, 885 F.2d 597, 604 (9th Cir. 1989). It should be noted, however, that to reject a claimant's testimony, the ALJ must make specific findings

**MEMORANDUM DECISION AND ORDER - 19**

stating clear and convincing reasons for doing so. *Holohan*, 246 F.3d at 1208 (citing *Reddick v.*

*Chater*, 157 F.3d 715, 722 (9th Cir. 1998)).

At the administrative hearing, Petitioner testified that, as a result of her alleged disability,

she (1) is unable to perform simple, unskilled jobs; (2) cannot drive without difficulty; (3) feels a

lot of pain an "achiness" most days; (4) has trouble sitting for more than 15 minutes at a time;

(5) experiences spasms in her spine and has shooting pains down her legs; (6) only walks about a

block a day with her dog; (7) cannot lift a gallon of milk; (8) cannot bend down without sharp,

shooting pains in her knees; (9) cannot climb even five steps more than once or twice a day; (10)

takes two days to do a load of laundry; (11) has lots of pain in her wrists on occasion; (12) has a

lot of trouble remembering daily things like mailing letters and paying bills; and (13) cannot

competently perform an 8-hour-a-day job because of her lack of memory and fatigue.  (AR 38-

42, 44-45).  These alleged difficulties were more-or-less reiterated by Petitioner's roommate and

friend, Maureen White, in a February 18, 2009 notarized, written statement.  (AR 156).[16]

---

[16]  As examples of Petitioner's physical condition, Ms. White stated: "Carrie has
difficulty walking up stairs and her knees make awful noises" (AR 156); "if she vacuums for
more than 5 minutes she becomes extremely pale, sweats profusely, and gets dizzy" (*id*.); "Carrie
has chronic lower back and knee pain all the time and if she does not take her hydrocodone every
four hours it escalates and she becomes virtually incapacitated from the pain" (*id*.); "[s]he
experiences extremely painful stomach cramps that cause her to double over at times" (*id*.);
"Carrie is not capable of doing the shopping if we need to get more than 3 items because just
going to the store is exhausting for her – she is good for about 15 minutes, tops" (*id*.); "Carrie
has difficulty getting out of the tub and difficulty with blow drying her hair" (*id*.); "[o]n the rare
occasions that Carrie cooks standing at the stove for more than 5 minutes is very detrimental to
her as her back begins to spasm and the pain is overwhelming" (*id*.); and "Carrie also has
difficulty in grasping objects and has spilled coffee on me at least twice because her hand gave
out" (*id*.).  The ALJ did not specifically address or explain away Ms. White's observations,
beyond merely stating that he "considered" the statement and, immediately thereafter, simply
restating its content within his decision.  (AR 15).  While Ms. White is no medical expert, her
insight into Petitioner's daily activities is relevant given the ALJ's reliance on similar, select
matters when dismissing Petitioner's credibility.

**MEMORANDUM DECISION AND ORDER - 20**

The ALJ ultimately discounted Petitioner's testimony, finding that "her statements concerning the intensity, persistence and limiting effects of [her] symptoms are not supported by the evidence of record/her treatment records and are not credible to the extent they are inconsistent with the . . . residual functional capacity assessment."  (AR 16).  While it may be true that the objective medical evidence cuts against Petitioner's subjective statements of the pain she suffers, it is not enough to reject outright Petitioner's complaints.  *See, e.g.*, *Marshall v. Heckler*, 731 F.2d 555 (8th Cir. 1984) (ALJ may not reject subjective complaints solely because of lack of objective medical evidence); *see also* 20 C.F.R. § 404.1529(c)(2) ("However, we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

Among the factors the ALJ must *also* consider when assessing Petitioner's credibility are:  (1) her daily activities; (2) the location, duration, frequency, and intensity of her pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication she takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, she receives or has received for relief of pain or other symptoms; (6) any measures other than treatment she uses or has used to relieve pain or other symptoms; and (7) any other factors concerning her functional limitations and restriction due to pain or other symptoms.  *See* 20 C.F.R. § 404.1529(c)(3).

Here, the ALJ did not address the above-mentioned factors.  Instead, the ALJ's critique of Petitioner's subjective complaints centered exclusively on her treatment records.  What's more, the records largely cited by the ALJ when ultimately questioning Petitioner's credibility

**MEMORANDUM DECISION AND ORDER - 21**

relate to the alleged existence Petitioner's fibromyalgia and osteoarthritis – two conditions that

the ALJ *actually found* to constitute severe impairments:

> In assessing the claimant's subjective allegations of disability, the undersigned notes most of all, her limited need for medical attention with no treatment records for 2006 and only a couple of reported fibromyalgia exacerbations a year. She also fails to even mention the same complaints/symptoms or level of severity she currently asserts. She was also noted to have stated the her fibromyalgia exacerbations were mood-related, and her depression was situational as she was having relationship problems. For one of her only two visits in 2008, it was specifically indicated that he fibromyalgia and osteoarthritis were stable. More recently, physical therapy and weight loss were being recommended.

(AR 16).

As with Petitioner's alleged CFS (*see supra* at pp. 10-13), it is not for this Court to

resolve the question of Petitioner's credibility; rather, it is tasked with reviewing the basis of the

ALJ's decision on that issue. While Petitioner may very well not be disabled, to the extent the

ALJ's conclusion in that respect was based on his credibility determination (*see* (AR 14-16)), the

specific rationale offered for questioning Petitioner's credibility is not clear and convincing

insofar as it is incomplete. The action is therefore remanded to allow the ALJ to revisit this

discrete issue and, in turn, determine its effect, if any, on Petitioner's disability determination.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences

from facts and determining credibility. *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d

at 1394; *Sample*, 694 F.2d at 642. If the evidence is susceptible to more than one rational

interpretation, one of which is the ALJ's, a reviewing court may not substitute its interpretation

for that of the ALJ. *Key*, 754 F.2d at 1549.

**MEMORANDUM DECISION AND ORDER - 22**

As to the ALJ's consideration of Petitioner's alleged depression, vertigo, neuropathy, and IBS, the evidence upon which the ALJ relied can reasonably and rationally support his conclusions, despite the fact that such evidence may be susceptible to a different interpretation by others.

However, the reasons given by the ALJ in support of his (1) rejection of Petitioner's CFS and (2) determination that Petitioner's complaints are not fully credible are not sufficiently clear and convincing and/or not supported by substantial evidence in the record.  It is for these reasons that it is necessary to remand this action for further consideration by the ALJ.

## V.  ORDER

Based on the foregoing, Petitioner's request for review is GRANTED.  The reasons given by the ALJ in support of his (1) rejection of Petitioner's CFS and (2) determination that Petitioner's subjective complaints are not credible, are not sufficiently clear and convincing and/or not supported by substantial evidence in the record.  Therefore, this matter is remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum Decision and Order.  *See Melkonyan v. Sullivan*, 501 U.S. 89, 99-100 (1991).

DATED:  **September 19, 2011**

Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 23**